UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD SIALOI, et al., | Case No.: 11-CV-2280 JLS (KSC) |
| Plaintiffs, | |
| v. | **ORDER ON RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW** |
| CITY OF SAN DIEGO, et al., | |
| Defendants. | (ECF Nos. 163, 169, 170, 171) |

Presently before the Court are the parties' Renewed Motions for Judgment as a Matter of Law ("RJMOL"). (ECF Nos. 163, 169, 170, 171.) The parties timely filed their Motions for Judgment as a Matter of Law prior to the case being submitted to the jury, and the Court denied their original motions based on the jury's verdict. (ECF No. 162.) Also before the Court are the parties' responses in opposition to the others' RJMOLs, (ECF Nos. 172, 173, 174, 175), and replies in support of their respective RJMOLs, (ECF Nos. 176, 177, 178, 179). After considering the parties' arguments and the law, the Court rules as follows.

/ / /

/ / /

/ / /

/ / /

# BACKGROUND

## I. Factual Background

The Court and parties are very familiar with the facts of this case. For background purposes, the Court reproduces in its entirety, and with minor alterations, the parties' Joint Statement of the Case.[1] (ECF No. 128); *see also Sialoi v. City of San Diego*, 823 F.3d 1223 (9th Cir. 2016) (recounting, in the motion for summary judgment phase, the then-facts of the case viewed in the light most favorable to Plaintiffs).

On October 2, 2010, police officers responded to a 9-1-1 report of two men with guns in the parking lot of the Harbor View Apartments at 404 47th Street in Southeast San Diego. The apartment complex was known for previous gun activity. At the same time, at the same complex, Plaintiffs were having a family barbeque to celebrate a child's birthday.

The police responded to the call and observed what they believed to be one or more men with guns. Subsequently, three males were ordered to the ground. It was eventually learned that the three males were teenage boys from the birthday party, playing with a piece of pipe with a scope taped on it, and a paintball gun.

The rest of the Sialoi family were nearby, outside or inside a family member's apartment. The police secured all of the family members, most in handcuffs, and entered the apartment. Plaintiffs allege that, during the encounter that followed, Defendants used excessive force, conducted unreasonable detentions, and entered the residence without a warrant. Defendants deny Plaintiffs' claims, allege the force and detentions were reasonable, and allege there was a legal justification to enter the apartment. Defendants also claim that any injuries sustained by Plaintiffs were not caused by the Defendants.

This lawsuit alleges violations of the Fourth Amendment to the United States Constitution, as well as state law claims. The Plaintiffs are Edward Sialoi, Teiano Sialoi, Garrett Sialoi, Braxton Falealili, Hardy Falealili, Sialoi Sialoi, Jr. ("Junior" Sialoi),

---

[1] The Court later draws all reasonable inferences from the evidence in favor of the non-moving party when discussing the parties' respective RJMOLs. *See infra* Parts I.A, II.

September Sialoi, Teiana Sialoi, Foleni Sialoi, Gayle Pasi, Lago Sialoi, Liua Sialoi, Kapili Sofa, and Teianarosa Sialoi.

The Defendants are the City of San Diego, San Diego police sergeant Allen Sluss, and San Diego police officers Tammy Clendenen, Michael Hayes, and Miguel Garcia.

## II.    Procedural Background

Before trial, both parties filed Motions for Judgment as a Matter of Law ("JMOL") on various issues. (*See* ECF Nos. 141, 142, 143, 144, 147.) During trial the Court informed the parties that it would reserve ruling on the motions until after it received the jury verdict. (ECF No. 162.)

The Jury returned its verdict on November 30, 2016, finding, relevant to the present motions, that (1) no Defendant conducted an unreasonable search or seizure of any Plaintiffs in violation of the Fourth Amendment of the United States Constitution, and (2) Defendant Allen Sluss unreasonably entered the residence of Plaintiffs September Sialoi and Junior Sialoi, in violation of the Fourth Amendment of the United States Constitution. (Special Verdict Form, ECF No. 161, Questions 1, 3.) Based on this verdict the Court denied the parties' JMOLs with leave to renew them pursuant to Federal Rule of Civil Procedure 50(b). (ECF No. 162.)

The parties subsequently filed their Renewed Motions for Judgment as a Matter of Law on the grounds previously raised in their original JMOLs. (*See* ECF Nos. 163, 169, 170, 171.) The Court considers each motion in turn.

## LEGAL STANDARD

A motion for judgment as a matter of law after the verdict renews the moving party's prior Rule 50(a) motion for judgment as a matter of law at the close of all the evidence. Fed. R. Civ. P. 50(b). "Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). Under Federal Rule of Civil Procedure 50, a court should render judgment as a matter of law only when "a party has been fully heard on an issue during a jury trial and the court finds that a

reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1); *see Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000). In other words, judgment as a matter of law is proper when "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004) ("JMOL should be granted only if the verdict is 'against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.'").

In contrast, "[a] jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao*, 307 F.3d at 918. In reviewing all the evidence in the record, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. 133 at 150. "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.

"The law of the case doctrine generally precludes a court from 'reconsidering an issue that already has been decided by the same court, or a higher court in the identical case.'"[2] *Rodriguez v. Cty. of L.A.*, 96 F. Supp. 3d 990, 997 (C.D. Cal. 2014) (citing *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)). Courts may exercise their discretion and depart from the law of the case where: (1) "the first decision was clearly erroneous"; (2) "an intervening change in the law has occurred"; (3) "the evidence on remand is substantially different"; (4) "other changed circumstances exist"; or (5) "a manifest injustice would otherwise result." *Alexander*, 106 F.3d at 876.

---

[2] The Court considers the law of the case doctrine throughout this Opinion because, in some cases, the Ninth Circuit confronted very similar factual scenarios in rendering its decision. *See generally Sialoi v. City of San Diego*, 823 F.3d 1223 (9th Cir. 2016).

## I. RJMOL—Qualified Immunity

Defendants renew their arguments that Defendant Sluss is immune from suit pursuant to the doctrine of qualified immunity. ("Qual. Immun. RJMOL," ECF No. 163.)

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 55 U.S. at 231.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 136 S. Ct. at 308 (citing *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). The Court does not require "'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 742) (emphasis removed). "Put another way, an officer's actions violate clearly established law when 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Sialoi*, 823 F.3d 1223, 1231 (9th Cir. 2016) (citing *Torres v. City of L.A.*, 548 F.3d 1197, 1211 (9th Cir. 2008)).

Defendants argue that Defendant Sluss is entitled to qualified immunity because his decision to conduct a safety check of the apartment immediately after the pat down/detention of the suspects coming out of the apartment was not unreasonable. (Qual.

Immun. RJMOL 2,[3] ECF No. 163.) Specifically, Defendants argue that (1) Defendant Sluss was not plainly incompetent; (2) the law surrounding the protective sweep doctrine is unsettled; (3) there was probable cause to arrest four of the suspects; (4) a reasonable officer could have concluded that exigent circumstances existed; and (5) the facts arising from the jury verdict are greater and subject to a different review than that provided by the appellate court opinion. The Court considers each argument in the course of its analysis.

### A. Whether the Search of the Apartment Violated the Sialois' Constitutional Rights

Defendants argue that ten key facts presented at trial demonstrate that Defendant Sluss is entitled to qualified immunity. (Qual. Immun. RJMOL 4–6, ECF No. 163.) However, the Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations, or weigh the evidence." *Reeves*, 530 U.S. at 150.

The Court begins with the presumption that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal quotation marks omitted); *Sialoi*, 823 F.3d at 1237. Defendants bear a "heavy burden" to demonstrate exigent circumstances excused Defendant Sluss's search of the Sialoi apartment absent a warrant. *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984); *Huff v. City of Burbank*, 632 F.3d 539, 544–545 (9th Cir. 2011), *reversed on other grounds by Ryburn v. Huff*, 565 U.S. 469 (2012).

Defendants have not met that burden. Drawing all reasonable inferences in favor of Plaintiffs, as the Court must, the Court finds that Defendant Sluss violated Plaintiffs' constitutional rights by entering the home. At the time of entry, the toy gun had already been discovered, and the stick with a scope attached was leaning against the tire. One could

---

[3] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

11-CV-2280 JLS (KSC)

reasonably infer that the officers knew both "weapons" were toys.[4] Junior Sialoi, while previously vocal, had been handcuffed and secured in a police car. Those in the apartment had been ordered out, and they complied. All family members were already detained on the curb, most in handcuffs. They had been searched for weapons, and none were found. Roughly twenty minutes had elapsed with no sounds of distress or violence from inside the apartment. Over twenty-five police officers were on the scene, and many stood around with no weapons drawn. Lt. Rohowitz, who left before the search of the apartment, testified that he "was confident that this was well in hand, and that whatever danger or jeopardy to either officers or civilians had passed." (*See* Qual. Immun. RJMOL Opp'n 9–10, ECF No. 172 (collecting these and additional reasonable inferences).) In view of these facts, "no reasonable officer would have thought it lawful to search the Sialois' apartment." *Sialoi*, 823 F.3d at 1238.

These facts—and others—are consistent with the jury's verdict rejecting Defendants' contention that exigent circumstances existed when it found that Defendant Sluss violated two Plaintiffs' Fourth Amendment rights when entering their apartment without a warrant. (*See* Special Verdict Form Question No. 3, ECF No. 161; *see also* Court's Jury Instructions No. 23, ECF No. 160 ("Exception to Warrant Requirement– Exigent Circumstances").) Indeed, the Jury specifically asked the Court in a written question to confirm the elements of the exigent circumstances exception to the search warrant requirement. (*See* Jurors Question No. 2, ECF No. 159-2.) Thus, substantial evidence exists to support the jury's finding that Defendant Sluss unconstitutionally entered the Sialoi apartment.

Defendants argue that Defendant Sluss had probable cause to arrest four of the suspects and thus "the sweep of the apartment was within the four corners of *Maryland v.*

---

[4] In addition, as the Ninth Circuit found, it is also reasonable to infer that "[n]o probable cause existed to believe that anyone connected with the Sialois possessed the 'second gun' because the officers knew, before searching the Sialois' apartment, that G.S.'s toy could not have been the 'first gun' described in the call to the police, and there was no other reason at that time to suspect that any of the Sialois had taken part or were taking part in any unlawful activity." *Sialoi*, 823 F.3d at 1238.

11-CV-2280 JLS (KSC)

*B[ui]e*." (Qual. Immun. RJMOL 3, ECF No. 163.) The Court disagrees. Defendants' reliance on *Buie*, 494 U.S. 325 (1990), is misplaced because the Ninth Circuit has already concluded that *Buie* is inapplicable in this case. Specifically, the Ninth Circuit explained:

> Here, the officers first attempt to justify the search of the Sialois' apartment on the theory that it was lawful under *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), as a warrantless "protective sweep" of the Sialoi apartment incident to the arrest of G.S. *Id.* at 334, 110 S.Ct. 1093. *Buie* is inapplicable, however. There, officers possessed a valid arrest warrant that authorized them to enter the suspect's residence. 494 U.S. at 330, 110 S.Ct. 1093. The issue in *Buie* was not whether the officers could enter the residence but instead whether, having obtained judicial authorization to enter the home, the officers were justified in continuing to search it after they had arrested the target of the arrest warrant. *Id. Buie* thus offers no independent justification for entry of a residence, but only addresses the question of what the police may do once lawfully inside. *See United States v. Flippin*, 924 F.2d 163, 165 (9th Cir. 1991) (noting that the "protective search was upheld in *Buie* because the police had a legitimate right to enter the home").

*Sialoi*, 823 F.3d at 1237.

But Defendants appear to argue that *Buie* may *now* apply because the Ninth Circuit nevertheless assessed the merits of Defendants' *Buie* argument in its Opinion. (Qual. Immun. RJMOL 10, ECF No. 163 (citing *Sialoi*, 823 F.3d at 1237–38 ("Moreover, even if *Buie* applied to the situation before us, *the facts in the light most favorable to the plaintiffs* do not suggest that the apartment 'harbor[ed] an individual posing a danger to those on the arrest scene.'" (emphasis added by Defendants)).) Defendants misunderstand the Ninth Circuit's opinion—this sentence and the accompanying paragraph are, at best, dicta.[5] The Ninth Circuit explicitly held that "*Buie* is inapplicable . . . . *Buie* . . . offers no independent

---

[5] And even if the Court were to consider this argument, the Court would draw all reasonable inferences in favor of Plaintiffs, and thus would agree with the Ninth Circuit's previous assessment. *See Sialoi*, 823 F.3d at 1237–38.

11-CV-2280 JLS (KSC)

justification for entry of a residence."[6] *Sialoi*, 823 F.3d at 1237. Nowhere does the Ninth Circuit limit its conclusion—to the motion for summary judgment then at hand or otherwise. Accordingly, the evidence, viewed in Plaintiffs' favor, establishes that Defendant Sluss violated two Plaintiffs' Fourth Amendment rights when entering their apartment without a warrant.

### B. Whether the Constitutional Right Was Clearly Established

Plaintiffs' Fourth Amendment rights were clearly established at the time of the search. Drawing all reasonable inferences in favor of Plaintiffs establishes that Defendant Sluss entered the Sialoi apartment when he already knew, among other things, that (1) the "weapons" were toys; (2) the family members both inside and outside the apartment were detained and unsuccessfully searched for weapons; and (3) there was no indication that there was an ongoing dangerous situation inside or outside the apartment. *See supra* Part I.A. The Ninth Circuit, faced with a similar record in this case, has already stated that "[i]t was clearly established at the time of the incident . . . that when officers arrive at a residence and find 'no evidence of weapons, violence, or threats,' that warrantless entry into that residence is unreasonable, regardless of the duration." *Sialoi*, 823 F.3d at 1238 (quoting *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1165 (9th Cir. 2014)). The Court agrees with the Ninth Circuit's assessment and finds that it applies with equal force post-trial.[7]

---

[6] Defendants appear to concede this in their Reply. (*See* Qual. Immun. Reply 5, ECF No. 179 ("The critical inquiry in establishing whether *Buie* applies is *not* whether police have an arrest warrant, but instead whether police have a lawful right to enter the residence." (emphasis added by Defendants)).) While Defendants argue that "Sgt. Sluss reasonably believed he had a legitimate right to enter the apartment," (*id.*), the Court disagrees.

[7] For this reason the Court finds unpersuasive Defendants' argument that the law surrounding the "protective sweep" doctrine is unsettled and thus Defendant Sluss was operating without clear law. (Qual. Immun. RJMOL 3, 9 ECF No. 163 (citing *Mendez v. County of L.A.*, 615 F.3d 1178, 1191 (9th Cir. 2016) ("We note that there is both a split between the circuits and a split within our circuit as to whether a protective sweep may be done where officers possess a reasonable suspicion that their safety is at risk, even in the absence of an arrest.")).) As discussed above, *supra* Part I.A, drawing all reasonable inferences in favor of Plaintiff, no reasonable officer would believe that anyone's safety was at risk at the time

11-CV-2280 JLS (KSC)

The Court understands and is sensitive to Defendants' concern that the "clearly established law" criteria should not be defined "at a high level of generality," (Qual. Immun. RJMOL Reply 2–3 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017))), and thus their argument that "the case law relied upon by Plaintiffs does not support the necessary threshold of 'clearly established' such that the particular circumstances are sufficiently similar" to what Defendant Sluss encountered, (*id.* at 2). But the Court does not require "'a case directly on point[; just that] existing precedent must have placed the statutory or constitutional question beyond debate.'" *Mullenix*, 136 S. Ct. at 308. And the Court agrees with the Ninth Circuit that, when drawing all reasonable inferences in Plaintiffs' favor, the facts of *Sandoval* did just that:

> The officers do not contend that Dunn entered the home to protect anyone within the home, and the record, taken in the light most favorable to the Sandovals, does not support an objective view that Dunn entered the house in service of officer safety. Roberts testified that he saw no weapons in the boys' hands and that he "never perceived a threat from the kids to [his] personal safety." The boys testified that they obeyed the officers' commands at all times. Even crediting Dunn's testimony that he felt that his partner "couldn't control the [boys]" from the window, or that he heard the tone of his partner's voice change, such a "concern," particularly if juxtaposed with Roberts's lack of concern about a threat, hardly supports a claim that entry was necessary to protect the officers from imminent injury.
>
> . . .
>
> By contrast, Dunn and Roberts arrived at a home to find a pattern consistent with either lawful or unlawful activity, but with no evidence of weapons, violence, or threats. The testimony that a reasonable officer would have perceived an immediate threat to his safety is, at a minimum, contradicted by certain portions of the record. The facts matter, and here, there are triable issues of fact as to whether "violence was imminent," *id.* at 992, and whether Dunn's warrantless entry was justified under the

Defendant Sluss decided to conduct a "protective sweep" (i.e., a warrantless entry) of the Sialoi apartment. In other words, while the law concerning "protective sweeps" might remain unclear, the law concerning whether an officer can enter a residence without a warrant and without "evidence of weapons, violence, or threats" is not. *Sialoi*, 823 F.3d at 1238.

11-CV-2280 JLS (KSC)

1
2
3
4

> emergency exception. We hold that Dunn is not entitled to qualified immunity because it was clearly established law as of 2009 that the warrantless search of a dwelling must be supported by either the exigency or the emergency aid exception. *Cf. Payton,* 445 U.S. at 586, 100 S. Ct. 1371.

5 *Sandoval*, 756 F.3d at 1164–65.[8] Thus, the Court finds that, drawing all reasonable

6 inferences in Plaintiffs' favor, Defendant Sluss violated Plaintiffs' Fourth Amendment

7 rights when conducting a warrantless search of the Sialoi apartment and that this right was

8 clearly established at the time of the search. Accordingly, the Court **DENIES** Defendants'

9 renewed motion for judgment as a matter of law on qualified immunity grounds (ECF No.

10 163).[9]

11 **II.    RJMOL—Unlawful Seizures**

12       Plaintiffs Foleni Sialoi, Edward Sialoi, Lago Sialoi, Liua Sialoi, September Sialoi,

13 Junior Sialoi, Teiana Sialoi, Hardy Falealili, Kapili Sofa, Gayle Pasi, and Teianarosa Sialoi,

14 (collectively, "Seized Plaintiffs"), renew their motion for judgment as a matter of law for

15 unlawful seizures under the Fourth Amendment. ("Seizure RJMOL" 1, ECF No. 169.)

16 Specifically, Seized Plaintiffs argue that they (1) were detained without reasonable

17 suspicion of criminal activity *by them*; and (2) once each individual was searched and found

18 without a weapon, the handcuffing and continued detention of those who were handcuffed

19 violated their Fourth Amendment rights. (*Id.* at 1–2.) The jury found that Defendants did

20 not conduct an unreasonable search or seizure of any of these Plaintiffs in violation of the

21 Fourth Amendment. (Special Verdict Form Question No. 1, ECF No. 161.)

22       "An investigatory detention is unlawful unless supported by reasonable suspicion."

23 *Sialoi*, 823 F.3d 1223, 1235 (9th Cir. 2016) (citing *Liberal v. Estrada*, 632 F.3d 1064, 1077

24

25

26 [8] As the Ninth Circuit noted, "[a]lthough *Sandoval* was published in 2014, it addresses alleged civil rights violations that occurred in October 2009, a year prior to the incident at issue in this case. 756 F.3d at 1158.

27 Thus, *Sandoval*'s discussion of clearly established law applies equally here." *Sialoi*, 823 F.3d at 1238 n.6.

28 [9] For this reason the Court does not reach Plaintiffs' alternative argument that Defendants failed to properly renew their original JMOL. (Qual. Immun. RJMOL Opp'n 10–11, ECF No. 172.)

11-CV-2280 JLS (KSC)

(9th Cir. 2011)). "Although less stringent than probable cause, reasonable suspicion nevertheless requires that officers have specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Id.* (internal quotation marks omitted).

Drawing all reasonable inferences in Defendants' favor, as the Court must now do, the Court is left with the following scenario. Police officers responded to a "hot call" (i.e., a call involving persons with weapons), and arrived at the Sialoi residence to find some Plaintiffs matching the description of the individuals reported in the 9-1-1 call (i.e., Samoan males, bushy hair, brown t-shirt, with weapons, ducking between cars). Officer safety required that the officers be on the lookout for more than two guns, and for weapons other than guns. The officers' suspicions were amplified by the nature of the call, the actual presence of weapons, the time of day, and the history of violent crime and gang activity at this location.

At the time the officers first spotted suspects holding what appeared to be weapons, there were at least fifteen persons associated with the suspects and approximately twelve officers. At least one individual was seen moving in and out of the apartment as police approached, and more than one Plaintiff testified to moving in and out of the apartment when police were present. Defendant Doeden testified that lying to police about the location of other suspects or weapons is not an uncommon occurrence, so the officers could have reasonably believed that a gunman may have slipped into the apartment. Junior Sialoi acted uncontrollably, which the officers found to be a distraction and a red flag under the circumstances. The darkness and proximity to the apartment would allow guns and other weapons to change hands or be hidden without police detecting them. The suspect with the gun was seen trying to hide it under a vehicle, exacerbating and corroborating the officers' suspicions of crime and safety issues. It was only after the officers swept the apartment that they realized the "guns" were toys. Once the officers determined there was no longer any immediate threat, declaring "Code 4," the Plaintiffs were immediately released from handcuffs and were free to leave. Defendants' police expert testified that there was

11-CV-2280 JLS (KSC)

probable cause to arrest at least four Plaintiffs: Garrett Sialoi, Teiano Sialoi, Braxton Falealili, and Junior Sialoi.[10] (*See* Seizure RJMOL Opp'n 4–5, ECF No. 173 (collecting these and additional reasonable inferences).)

Given these reasonable inferences, the Court concludes that there was substantial evidence to support the jury's conclusion that the officers did not unreasonably detain the Seized Plaintiffs in violation of the Fourth Amendment, even though the jury could have found the opposite. *See Pavao*, 307 F.3d at 918. The Court understands Plaintiffs' contention that an investigatory detention must be supported by reasonable suspicion of criminal activity by *each* person detained, and must be based on "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that *the particular person detained* is engaged in criminal activity." (Seizure RJMOL Reply 2, ECF No. 178 (quoting *Sialoi*, 823 F.3d at 1235 (emphasis added by Plaintiffs) and describing the conduct of each Plaintiff at the time of his or her seizure).) But the jury had substantial evidence to find that the officers suspected each of the Seized Plaintiffs of criminal activity, especially given that (1) the officers responded to a "hot call"; (2) some of the Plaintiffs matched the description of the suspects and had what appeared to be guns; (3) the officers were on the lookout for more than just two guns (including other weapons); (4) people were moving in and out of the apartment; (5) weapons could have easily changed hands given the time of day (or night); (6) Junior Sialoi was not cooperating with officers and thus could have been a distraction for others; and (7) the officers did not realize the guns were toys until *after* they had searched the apartment (i.e., after they seized the moving Plaintiffs).

Plaintiffs also argue that "[e]ven where there *is* reasonable suspicion of criminal activity, a detention becomes unlawful where it is more intrusive than necessary." (Seizure

---

[10] Defendants also claim that Plaintiffs' expert, Jack Smith, opined at trial that probable cause existed to arrest these four individuals, which Plaintiffs vehemently dispute. (Seizure RJMOL Reply 3 n.2, ECF No. 177.) Accordingly, the Court does not consider Defendants' characterization of Mr. Smith's testimony when conducting its analysis.

11-CV-2280 JLS (KSC)

RJMOL 3, ECF No. 169.) Specifically, Plaintiffs argue that, after the Seized Plaintiffs were searched and no weapons were found, their continued detention became unlawful. (*Id.* at 3–4.)

"A seizure becomes unlawful when it is 'more intrusive than necessary.'" *Ganwich v. Knapp*, 319 F.3d 1115, 1122 (9th Cir. 2003) (quoting *Florida v. Royer*, 460 U.S. 491, 504 (1983)). "The scope of a detention 'must be carefully tailored to its underlying justification.'" *Id.* (quoting *Royer*, 460 U.S. at 500).

Drawing all reasonable inferences in favor of Defendants, the jury could have reasonably found that these seizures were carefully tailored to the officers' underlying justification of securing the area, searching for weapons, and protecting the safety of all involved. Among other things, the possibility that there were more than one weapon, and that these weapons could have easily changed hands in the dark of night, counseled the continued detention of these Plaintiffs until the officers completed securing the area, which included securing the guns on the floor and searching the apartment for other weapons or persons; in other words, it would not be reasonable to release these Plaintiffs when there was a continued risk of unlawful activity. Indeed, the Seized Plaintiffs were immediately released after the officers completed their search of the apartment (i.e., after the officers ordered the Code 4). Thus, the jury could have reasonably found that the seizure of the moving Plaintiffs was "carefully tailored" to the detention's underlying justification. *Cf. Ganwich*, 319 F.3d at 1122 ("Here, the defendants argue that the underlying justifications for detaining the plaintiffs were to prevent flight in the event incriminating evidence was found, to minimize the risk of harm to the officers, and to further the orderly completion of the search—the same justifications that made reasonable the seizures in *Michigan v. Summers*. Although these considerations amply justified the officers' ordering the plaintiffs to remain in the waiting room during the search of the premises, they did not justify the officers' coercing the plaintiffs into submitting to interrogations.").

Accordingly, the Court **DENIES** Plaintiffs' RJMOL that the seizures of certain moving Plaintiffs violated the Fourth Amendment (ECF No. 169).

14

### III. RJMOL—Unlawful Pat-Downs

Plaintiffs Teiana Sialoi, Liua Sialoi, Lago Sialoi, Foleni SIaloi, Edward Sialoi, Hardy Falealili, and September Sialoi, (collectively, "Pat-Down Plaintiffs"), renew their motion for judgment as a matter of law that their pat-down searches were unlawful. ("Pat-Down RJMOL," ECF No. 170.) The jury found that Defendants did not conduct an unreasonable search or seizure of any of these Plaintiffs in violation of the Fourth Amendment. (Special Verdict Form Question No. 1, ECF No. 161.)

"Incident to a valid investigatory stop, an officer may, consistent with the Fourth Amendment, conduct a brief pat-down (or frisk) of an individual when the officer reasonably believes that the persons with whom he is dealing may be armed and presently dangerous." *Sialoi*, 823 F.3d at 1236 (9th Cir. 2016) (internal quotation marks omitted) (quoting *United States v. I.E.V.*, 705 F.3d 430, 434 (9th Cir. 2012)). "This interest in the safety of the officers and others nearby is the 'sole justification' for a *Terry* frisk." *Id.* (quoting *I.E.V.*, 705 F.3d at 435).

Plaintiffs argue that the Ninth Circuit has already determined that the pat-down searches were unlawful under the Defendant officers' version of events. (Pat-Down RJMOL 2–3, ECF No. 170.) Specifically, the Ninth Circuit held:

> Moreover, even if, contrary to the remaining plaintiffs' version of the events, the officers had not immediately discovered that the ostensible weapon was a mere toy, the officers had no reasonable basis to expect to find the "second" gun, which was *a shotgun*, hidden on the body of one of the remaining family members. Because no officer could have reasonably believed that any of the remaining plaintiffs might have a concealed weapon, we hold that the frisks violated the Fourth Amendment.

*Sialoi*, 823 F.3d at 1236 (emphasis in original).

The Court disagrees. The Ninth Circuit viewed all the facts in the light most favorable to Plaintiffs, which included the inference in Plaintiffs' favor that there was only one other gun, and that it was a shotgun. *See id.* Thus it was unreasonable for the officers

to believe these family members, particularly thirteen-year-old Teiana, *see id.* n.4, were hiding the large gun on their person. As discussed above, *supra* Part II, additional evidence offered at trial, and all reasonable inferences drawn in Defendants' favor, demonstrated that the officers on the scene believed there were more weapons besides the two reported on the 9-1-1 call, so it was reasonable to suspect that these moving Plaintiffs might be harboring a more easily concealable weapon than a shotgun (e.g., a knife or smaller gun).

Plaintiffs argue that the "Ninth Circuit necessarily considered, and rejected, the carte-blanche possibility of unknown knives or other weapons." (Pat-Down RJMOL 3, ECF No. 170.) But Plaintiffs do not provide a citation for their own carte-blanche statement, and the Court can find none in the Ninth Circuit's opinion. To the contrary, it appears that the Ninth Circuit only considered the possibility of the two guns described in the 9-1-1 call. *Compare Sialoi*, 823 F.3d at 1228 (describing the 9-1-1 call wherein the caller reported that one person "carried a handgun, the other a shotgun"), *with id.* at 1236 ("The defendants attempt to justify these frisks on the basis that they were necessary to find and secure the 'second' gun described in the earlier report to the police . . . . [T]he officers had no reasonable basis to expect to find the 'second' gun, which was a *shotgun*, hidden on the body of one of the remaining family members." (emphasis in original).) Because the Ninth Circuit did not consider this—and other evidence offered at trial—the Court cannot conclude that the Ninth Circuit's opinion necessarily forecloses the jury's verdict or demands that it be overturned.

Thus, the Court concludes that there was substantial evidence to support the jury's conclusion that the officers did not unreasonably search the Pat-Down Plaintiffs in violation of the Fourth Amendment, even though the jury could have found the opposite. *See Pavao*, 307 F.3d at 918. Accordingly, the Court **DENIES** the Pat-Down Plaintiffs' renewed motion for judgment as a matter of law that their pat-down searches were unlawful under the Fourth Amendment (ECF No. 170).

## IV. RJMOL—Unlawful Arrests

Plaintiffs Garrett Sialoi, Teiano Sialoi, Braxton Falealili, and Junior Sialoi,

11-CV-2280 JLS (KSC)

1  (collectively, the "Arrested Plaintiffs"), renew their motion for judgment as a matter of law

2  that their arrests were unlawful under the Fourth Amendment. ("Arrest RJMOL," ECF No.

3  171.) The jury found that Defendants did not conduct an unreasonable search or seizure of

4  any of these Plaintiffs in violation of the Fourth Amendment. (Special Verdict Form

5  Question No. 1, ECF No. 161.)

6      Plaintiffs' argument is twofold: (A) the seizure of these Plaintiffs constituted an

7  arrest as a matter of law, and (B) the officers did not have probable cause to arrest these

8  Plaintiffs. (*See generally* Arrest RJMOL, ECF No. 171.) The Court considers each

9  argument in turn.

10      *A. Whether the Detentions Constituted an Arrest*

11      First, Plaintiffs argue that these Plaintiffs were under arrest once placed in police

12  cars. "'There is no bright-line rule to determine when an investigatory stop becomes an

13  arrest." *Sialoi*, 823 F.3d at 1232 (quoting *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th

14  Cir. 1996)). Instead, courts consider a number of factors to distinguish between

15  investigatory stops and arrests, including "whether the suspect was handcuffed; whether

16  the police drew their weapons; whether the police physically restrict[ed] the suspect's

17  liberty, including by placing the suspect in a police car; whether special circumstances

18  (such as an uncooperative suspect or risk of violence) are present to justify the intrusive

19  means of effecting a stop; and whether the officers are outnumbered." *Id.* (internal

20  quotation marks omitted).

21      The Court agrees with Plaintiffs that Garrett Sialoi, Teiano Sialoi, and Braxton

22  Falealili were arrested as a matter of law. Even drawing all reasonable inferences in

23  Defendants' favor, the Court is still left with the factual scenario that officers ordered these

24  teenagers to the ground, drew their weapons, handcuffed them, and placed them in police

25  cars. The Ninth Circuit has already held that "*any reasonable juror would be compelled* to

26  find an arrest where the officers ordered the two plaintiffs from a car, shone a spotlight on

27  them, drew their weapons, handcuffed them, and then placed them in separate police cars."

28  *Sialoi*, 823 F.3d at 1232 (discussing *Lambert*, 98 F.3d at 1185). The Ninth Circuit

considered the same factual scenario presented at trial and has already found that "the officers' conduct toward [Teiano] and [Braxton] was, if anything, more intrusive and thus amounted to an arrest." *Id.* The Court agrees and finds that these then-teenagers were arrested as a matter of law.[11]

However, the Court does not agree that Junior Sialoi's detention was an arrest as a matter of law. To begin, the Ninth Circuit did not find that *Lambert* compelled the conclusion that Junior Sialoi's detention amounted to an arrest. Instead, the court found that "[a]s with the three teenagers, the factors set forth in [*Lambert*] compel the conclusion that a rational jury *could find* that the officers' conduct with respect to [Junior Sialoi] amounted to an arrest." *Sialoi*, 823 F.3d at 1234 (emphasis added). Like the teenagers, Junior Sialoi was handcuffed and placed in a police car. But unlike the others he raised his voice at the officers and, at least initially, refused to cooperate with them. Drawing all reasonable inferences in favor of Defendants, Junior Sialoi's disruptive conduct and initial refusal to cooperate with police officers, coupled with the ongoing risk of unlawful activity and number of Sialoi family members present, arguably "justif[ied] the intrusive means of effecting [the] stop." *Sialoi*, 823 F.3d at 1232.[12] Thus, the Court cannot conclude that Junior Sialoi's detention was an arrest as a matter of law.

## B. Whether the Officers had Probable Cause to Arrest Plaintiffs

"'Under the Fourth Amendment, a warrantless arrest requires probable cause,' which 'exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested.'" *Sialoi*, 823 F.3d at 1232 (quoting *United States*

---

[11] The Ninth Circuit did not explicitly mention Garrett Sialoi because Defendants "oddly . . . admit[ted] that the officers arrested [Garrett]." *Sialoi*, 823 F.3d at 1233. Nevertheless the Ninth Circuit's—and this Court's—conclusion applies with equal force to Garrett Sialoi.

[12] Notably, Defendants claim that these four Plaintiffs were not arrested, but do not provide any reason why besides noting that "Defendants contend that these particular detentions allowed for placement in the police cars during the investigatory detention." (Arrest RJMOL Opp'n 6, ECF No. 173.)

11-CV-2280 JLS (KSC)

*v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)). "Whether probable cause exists depends 'on the totality of facts' available to the officers, who 'may not disregard facts tending to dissipate probable cause.'" *Id.* (quoting *Lopez*, 482 F.3d at 1072). "'In some instances there may initially be probable cause justifying an arrest, but additional information obtained at the scene may indicate that there is less than a fair probability that the [individual] has committed or is committing a crime. In such cases, execution of the arrest or continuation of the arrest is illegal.'" *Id.* (alteration in original) (quoting *Lopez*, 482 F.3d at 1072).

Plaintiffs argue that Defendants did not have probable cause to arrest these four Plaintiffs. (Arrest RJMOL 3–4, ECF No. 171.) Specifically, Plaintiffs argue that the three teenagers "were taken to the ground at gunpoint, searched, handcuffed and placed in police cars *before* the officers ever checked to see if the weapons were real. Thus, at the time of the arrests, Sgt. Sluss had no idea if the guns were real, or whether any crime had been committed." (*Id.* at 3 (emphasis in original).)

But this is not the standard for probable cause. If Plaintiffs' argument was the law, officers in similar situations would have to first secure and identify an alleged weapon before securing the alleged suspect wielding the weapon, regardless of the risk to officer or public safety. Plaintiffs cite no case holding that a police officer must do so to properly support a claim of probable cause, and the Court declines to be the first.

Drawing all reasonable inferences in Defendants' favor, the Court finds that Defendants had probable cause to arrest these three Plaintiffs. Officers arrived at the scene in response to a "hot call" to see three individuals in close proximity, some of which matched the description of the suspects in the 9-1-1 call holding what appeared to be guns. Officers ordered them to the ground, cuffed them, and placed them in police cars while they detained others and searched the apartment for other possible weapons or unlawful activity. After they secured the area, officers secured the guns and found them to be toys, at which point they immediately removed all Plaintiffs' handcuffs. Given these—and other—facts, the Court finds that the jury could reasonably conclude that officers at the scene had probable cause to arrest these three teenagers until they determined that the guns

11-CV-2280 JLS (KSC)

were toys. Thus, the Court concludes that there was substantial evidence to support the jury's conclusion that the officers did not unreasonably detain and/or arrest these moving Plaintiffs in violation of the Fourth Amendment, even though the jury could have found the opposite. *See Pavao*, 307 F.3d at 918. Accordingly, the Court **DENIES** the Arrested Plaintiffs' renewed motion for judgment as a matter of law that their detentions and/or arrests were unlawful under the Fourth Amendment (ECF No. 171).

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the parties' Renewed Motions for Judgment as a Matter of Law. (ECF Nos. 163, 169, 170, 171.)

**IT IS SO ORDERED.**

Dated: May 1, 2017

Hon. Janis L. Sammartino
United States District Judge

11-CV-2280 JLS (KSC)